***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Liberty Mutual Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Judicial Notice is taken of the Opinion and Award filed on 29 October 2001, wherein plaintiff was found to have sustained injuries as a result of a specific traumatic incidents of the work assigned on 20 September 1999 and 19 April 2000. Defendants paid plaintiff all disability benefits under the Opinion on 17 December 2001.
5. Plaintiff's average weekly wage was $375.89, which yields a compensation rate of $250.50 per week.
6. The issue for determination is to what, if any, additional benefits is plaintiff entitled as a result of the compensable 20 September 1999 and 19 April 2002 incidents?
7. Judicial Notice is taken of Dr. Poehling's deposition transcript from the prior hearing at page 9, line 11 through page 10, line 5.
8. The defendant-employer terminated plaintiff on 10 December 2001.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the undersigned makes the following
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a thirty-two year old male. He had a pre-existing back condition which was aggravated by the 20 September 1999 compensable injury. On 19 April 2000, plaintiff's second compensable injury caused a recurrent herniated disc at L5-S1, for which defendants provided medical treatment and indemnity benefits under the 29 October 2001 Opinion and Award.
2. Throughout his employment with defendant-employer, plaintiff had been reprimanded for his work attendance, both before and since the workplace injuries. In 1998, plaintiff was reprimanded in his performance review for his attendance.
3. On 11 December 2000, plaintiff returned to work for the defendant-employer.
4. Attendance is important due to the time-sensitive nature of defendant-employer's industry. Therefore, defendant-employer developed and uniformly applied its attendance policy to all its employees.
5. In accordance with the attendance policy, employees with six months to six years of employment were entitled to six days of sick leave and ten vacation days per year. Employees are charged with a Full Date Occurrence (FDO) anytime they are not at work if the absence does not qualify as vacation, sick, funeral, holiday or jury duty leave, as spelled out in the policy. Employees who incur two FDO's in twelve months are given a verbal warning. Those with three FDO's in twelve months receive a written warning. Those with more than three FDO's in twelve months may be terminated.
6. Under the attendance policy, employees are charged a partial day occurrence (PDO) for arriving late to work, returning late from lunch, leaving work for appointments, or leaving before the end of the shift. Employees who receive eight PDO's in 12 months receive a verbal warning, nine PDO's receive a written warning and more than nine PDO's in 12 months may be terminated.
7. In 2001, plaintiff's attendance record showed he took sick leave on January 2, 3, 18; February 15; March 5 and 6, for a total of six days. Plaintiff took vacation leave January 11; March 16; July 2, 3, 5; August 8, 22, 29, and October 8, 10, 17 and 25, for a total of twelve days.
8. Plaintiff had six PDO's (June 11, 21, 28; August 17; October 18 and November 13) and four FDO's (June 15; August 29; November 28 and December 7).
9. Plaintiff's absence on 18 January 2001 was primarily related to his compensable workers' compensation injury even though he also reported a problem with gastroenteritis.
10. Plaintiff contends that he was fired under false pretext shortly after receiving a favorable ruling from the Industrial Commission. However, this contention is not supported by the competent evidence presented at the hearing.
11. Plaintiff further testified that some of his occurrences should have been charged as compensatory leave. However, the competent evidence in the record establishes that plaintiff did not have any compensatory leave time noted on his timesheet. Therefore, he had no compensatory leave to be taken. Plaintiff's testimony on this issue is not accepted as credible.
12. Defendant-employer's attendance policy is uniformly applied to all employees. Plaintiff was well aware of the policy, as he had previously been reprimanded for his chronic absenteeism. Any other employee would have been terminated for such absenteeism under defendant's policy.
13. Plaintiff's disability relating to his compensable injury had ended by 7 December 2001. His treating physicians allowed him to lift up to 50 pounds on 22 February 2001. By 16 August 2001, plaintiff only complained to his doctor of muscular pain during his return examination and plaintiff was taking no medication. Dr. Wilson prescribed a muscle relaxer to be taken as needed and scheduled plaintiff to return in one year. Dr. Wilson rated plaintiff with a 15% permanent partial impairment to his back on 30 November 2001. At his return examination with Dr. Wilson on 1 August 2001, plaintiff reported some back pain without radiculopathy, but he was doing well.
14. Any inability to earn the same wages after 7 December 2001 is due to plaintiff's failure to comply with defendant-employer`s attendance policy.
 ***********
Base upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). "If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work. . . ." Watkins v. Central Motor Lines,279 N.C. 132, 181 S.E.2d 588 (1971). However, as stated in Commission Rule 404(1), this presumption of continued disability is rebuttable.Stone v. G. G. Builders, 346 N.C. 154, 484 S.E.2d 365 (1997). In the instant case, defendants have successfully rebutted the presumption of continuing disability by showing that suitable work has been available for the plaintiff since he returned to work on 11 December 2000 and that plaintiff was capable of performing the suitable employment available. Plaintiff continued to work for the employer for approximately one year; he was physically able to perform his job duties; by August 2001 he was only reporting some back pain with no numbness or radicular pain and he was not taking any medication for back pain; defendants provided suitable employment and plaintiff has demonstrated that he was capable of performing this work. Any inability to earn pre-injury wages on or after 10 December 2001 was due to misconduct by the plaintiff and was not due to the compensable injury.
2. Defendants may also rebut the presumption of disability by showing that "plaintiff was terminated from his employment (1) for misconduct or fault unrelated to the compensable injury and (2) for which a nondisabled employee would ordinarily have been terminated." Seagraves v. Austin Co.of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996). If both prongs are found, this is termed a "constructive refusal" of suitable employment under N.C. Gen. Stat. § 97-32. The credible evidence clearly establishes that plaintiff's misconduct, his chronic absenteeism, is the basis for his dismissal. All employees are subject to the attendance policy and, moreover, due to the time sensitive nature of the airline industry, compliance with the policy is mandatory for employees, both nondisabled and those with injuries. Therefore, defendants have proven by greater weight of the evidence that plaintiff's termination was due to his chronic absenteeism, and this amounted to a constructive refusal to accept suitable employment.
3. Any contention by plaintiff that his unexcused absences were due to the workplace injury is not supported by his attendance record. Plaintiff's testimony to the contrary is not accepted as credible, particularly on the matter of compensatory time, and regarding absences for problems related to the compensable injuries, as the medical records and attendance records do not corroborate plaintiff's testimony.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional temporary total disability compensation under the law, must be DENIED.
2. Each side shall pay its own costs.
 ORDER
Plaintiff's Form 18M Employee's Application for Additional Medical Compensation is approved. Plaintiff is entitled to continuing medical treatment for his compensable back injury to be paid for by defendants.
This the ___ day of September, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER